ORIGINAL

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

APR 20 2004

AT_____ O'CLOCK_____

Lawrence K. Baerman, Clerk - Syracuse

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**RAFAEL RIVERA,**

       **Petitioner,**

  **v.**
                                **9:00-CV-2059**
                                **(GLS) (GJD)**

**GEORGE DUNCAN, Superintendent,**

       **Respondent.**

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PETITIONER:**

**RAFAEL RIVERA**
Petitioner, *pro se*
95-A-2564
Elmira Correctional Facility
Box 500
Elmira, NY 14902-0500

**FOR THE RESPONDENT:**

**HON. ELIOT SPITZER**       **MARIA MORAN, Esq.**
Office of the Attorney General   Assistant Attorney Gen'l
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**GUSTAVE J. DIBIANCO, MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION**

**I.**     **Background**

     **A.**     **State Court Proceedings**

The testimony adduced at trial reveals that on November 14, 1996, Corrections Officer James Farnan was working at the Franklin Correctional Facility.  *See* Transcript of Trial of Rafael Rivera (9/17/97) ("Trial Tr.") at pp. 123-24.  On that day at approximately 6:45 p.m., Corrections Officer Farnan heard another corrections officer state that a fight was underway on the walkway of that facility, and that assistance was needed.  Trial Tr. at pp. 127-30.  Corrections Officer Farnan responded to the request for help, and upon arriving at the scene of the disturbance, observed petitioner, *pro se* Rafael Rivera ("Rivera" or "petitioner") holding a weapon.  Trial Tr. at pp. 133, 145.  As a result of that incident, Rivera was charged by a Franklin County grand jury with promoting prison contraband in the first degree.  *See* Indictment No. I-289-96 ("Indictment") (docket no. 9, Ex. 2).[1]

On the day Rivera's trial commenced, Franklin County Court Judge Robert G. Main, Jr. noted that Rivera had previously rejected a plea proposal offered by the prosecution wherein Rivera would have been permitted to plead guilty to attempting to promote prison contraband in the first degree, for which Rivera would have been sentenced to an agreed

---

[1]     The weapon was described as "a 6 inch metal rod, sharpened to a point and with a handle fashioned from tape with a string attached."  *See* Indictment.

2

upon term of imprisonment of one and one-half to three years.  Trial Tr. at

pp. 9-10.  Judge Main then spoke to Rivera through an interpreter and

ascertained that Rivera was aware that if he was found guilty of the charge

in the indictment, he could be sentenced as a persistent felony offender to a

minimum term of imprisonment of fifteen years to life, and a maximum term

of twenty-five years to life imprisonment.  Trial Tr. at pp. 10-11.  Rivera's jury

trial then commenced, with Judge Main presiding.  At the conclusion of that

trial, the jury found Rivera guilty of promoting prison contraband in the first

degree.  Trial Tr. at p. 437.

On November 10, 1997, Rivera appeared before Judge Main for

sentencing.  At that time, Assistant District Attorney John D. Delehanty, Esq.

("ADA Delehanty") informed Judge Main that in exchange for Rivera both

admitting that he was a second felony offender and waiving his right to

appeal his conviction, the District Attorney's office would agree to Rivera

receiving a maximum term of three and one half to seven years

imprisonment, rather than the longer term authorized by law if the

prosecution established that Rivera was a persistent felony offender.  *See*

Transcript of Sentencing of Rafael Rivera (11/10/97) ("Sentencing Tr.") at

3

pp. 3-4.[2] After Judge Main ensured that Rivera was able to understand the consequences of entering into the agreement, *id*. at pp. 9-11, Judge Main allowed Rivera to accept ADA Delehanty's proposal. *See id.* at p. 11. Judge Main thereafter sentenced Rivera as a second felony offender to a term of three and one half to seven years imprisonment, to be served consecutive to the sentence Rivera was already serving at that time. Sentencing Tr. at pp. 18-19.

In her appellate brief, Rivera's counsel argued that the sentence imposed on Rivera was harsh and excessive. *See* docket no. 9, Ex. 3. Rivera thereafter submitted a supplemental *pro se* appellate brief in which he alleged that: i) he was coerced into accepting the agreement offered by ADA Delehanty at Rivera's sentencing; ii) Rivera was deprived of his right to be present during the material stages of his trial when a court clerk gave exhibits to the jury during its deliberations outside the presence of Rivera and his counsel; and iii) Judge Main wrongfully denied Rivera's motion to dismiss the indictment at the close of the prosecution's proof. *See* docket no. 9, Ex. 4. On January 13, 2000, the New York State Supreme Court Appellate Division, Third Department affirmed Rivera's conviction and

---

[2]     Under the terms of the proposed agreement, Rivera retained his right to appeal the length of his sentence.  Sentencing Tr. at p. 4.

sentence, *see People v. Rivera*, 268 A.D.2d 674 (3d Dept. 2000), and the New York Court of Appeals thereafter denied Rivera's application for leave to appeal. *People v. Rivera*, 94 N.Y.2d 952 (2000).

### B.    Proceedings in this Action

Rivera filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this District on December 23, 2000.  Docket no. 1.  This Court then ordered a response to that pleading.  Docket no. 3.  The Office of the Attorney General for the State of New York ("Attorney General"), acting on respondent's behalf, filed an answer and memorandum of law requesting dismissal of the petition.  *See* docket nos. 9-10.  Rivera then filed a reply memorandum in further support of his application, *see* docket no. 17 ("Reply Mem."), which he thereafter supplemented on April 8, 2003.  *See* docket no. 35 ("Supplemental Mem.").

## II.   Discussion

### A.    Waiver of Right to Appeal

Respondent argues that because petitioner waived his right to appeal the conviction in exchange for his not being sentenced as a persistent felony offender, the present action should be dismissed.  Docket no. 10 at pp. 4-5.

5

Petitioner contends that his waiver of his right to appeal was "unconstitutional[]," and that therefore the waiver to which he agreed at the sentencing proceeding was invalid.  Reply Mem. at pp. 2-4.

The Appellate Division determined that Rivera's waiver of his right to appeal his conviction was valid.  *See Rivera*, 268 A.D.2d at 674-75.  A finding by a state court that a party has waived his right to file an appeal is a factual finding entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Reyes v. Mantello*, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (factual determination of Appellate Division that a party made "a voluntary, knowing and intelligent waiver of his right to appeal" was a factual determination that was "presumed to be correct" unless rebutted by "clear and convincing evidence"); *Simmons v. Beyer*, 689 F.Supp. 432, 438 (D.N.J. 1988) (determination that defendant did not voluntarily and knowingly waive his right to appeal was a factual finding of the state court).

In support of his petition, Rivera has not presented any (much less clear and convincing) evidence which indicates that the Appellate Division's decision upholding the validity of the waiver is erroneous.  Moreover, the Court's review of the transcript of the sentencing hearing belies petitioner's

contention that his waiver was invalid.  At that proceeding, Rivera's counsel explained the terms of the proposal, which he described as being "extremely generous," to both the court and Rivera.  *See* Sentencing Tr. at p. 3.  After determining that Rivera was voluntarily entering into the agreement and was not under the influence of drugs or alcohol, Judge Main reiterated the terms of the proposal, which included Rivera admitting that he was a second felony offender and waiving his right to appeal the conviction.  *See* Sentencing Tr. at 9-10.  Rivera then indicated that he wished to accept the proposed agreement.  Sentencing Tr. at 11.  Thus, Rivera's waiver of his right to appeal his conviction was a "knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences."  *See U.S. v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999) (citation omitted).

Federal habeas review of a claim is unavailable where a state court has properly found that a party waived his right to have that issue reviewed on appeal.  *See Singh v. Kuhlmann*, 1995 WL 870113, at *12 (S.D.N.Y. Aug. 25, 1995), *adopted*, 1996 WL 337283 (S.D.N.Y. June 19, 1996); *Moore v. Riley*, 1990 WL 59589, at *2 (E.D.N.Y. May 3, 1990) (where petitioner

agreed to waive the right to appeal the outcome of his *Wade*[3] hearing, petitioner could not challenge *Wade* determination in federal court because "[t]o allow him to do so would be to sanction petitioner's unilateral breach of the plea agreement").

Since the first, second and third grounds in the petition are based upon claims that the Appellate Division correctly found to have been waived by Rivera, the Court recommends that these grounds be denied. *E.g.,* *Singh*, 1995 WL 870113, at *12; *Moore*, 1990 WL 59589, at *2.

## B.   Unexhausted Claims

In his reply memorandum, petitioner asserts several theories in support of his habeas application which are not mentioned in his petition. Specifically, Rivera claims that:  i) the prosecution improperly used peremptory challenges to exclude African-Americans and females from the jury at Rivera's criminal trial[4] (*see* Reply Mem. at pp. 21-22, *see also*

---

[3]        *United States v. Wade*, 388 U.S. 218 (1967).

[4]        In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the purposeful exclusion of jurors based upon race violates the Equal Protection Clause of the Constitution.  *Id.*, 476 U.S. at 84.  In *J.E.B. v. Alabama*, 511 U.S. 127 (1994), the Supreme Court extended *Batson* to prohibit gender-based discrimination in the exercise of peremptory challenges, finding that "[d]iscrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process."  *J.E.B.*, 511 U.S. at 140 (citation omitted).  This Court will refer to petitioner's challenges to the composition of the jury collectively

Supplemental Mem. at pp. 11-12); ii) his conviction was obtained in violation of his Fifth Amendment right against Double Jeopardy (*see* Reply Mem. at pp. 26, 30; *see also* Supplemental Mem. at p. 8); and iii) the prosecution provided Rivera with incomplete information in response to one of defense counsel's discovery demands, in violation of Rivera's right to be provided with all relevant *Brady*[5] material (*see* Reply Mem. at pp. 27-28).

Rivera is proceeding *pro se* in this proceeding, and therefore his submissions should be construed liberally. *Williams v. Kullman*, 722 F.2d 1048, 1050-51 (2d Cir. 1983); *Gulliver v. Dalsheim*, 687 F.2d 655, 658-59 (2d Cir. 1982); *McBride v. Senkowski*, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citations omitted). Thus, the Court considers these three theories as additional claims in support of petitioner's habeas application.

However, prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144,

---

as Rivera's "*Batson*" claim.

[5]    *Brady v. Maryland*, 373 U.S. 83 (1963).

147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118 (1995).  This exhaustion requirement is satisfied if the claim has been "fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*); *Morales v. Miller*, 41 F.Supp.2d 364, 374 (E.D.N.Y. 1999).  Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."  *Daye*, 696 F.2d at 192; *Morales*, 41 F.Supp.2d at 374.

The *Batson*, Double Jeopardy and *Brady* claims referenced above were **not** raised in either the appellate brief filed on Rivera's behalf or in his supplemental *pro se* appellate brief.  Additionally, Rivera has indicated that he did not file any state-court challenges to his conviction other than his direct appeal.  *See* Petition at ¶ 10.  Therefore, petitioner has not exhausted these claims in the state courts.

When a claim has never been presented to the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as

such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d

at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v.*

*Wittner*, 228 F.3d 113, 124 (2d Cir. 2000), *cert. denied*, 532 U.S. 943

(2001).[6]  Therefore, this Court must determine whether it would be futile for

Rivera to present the above-mentioned claims to the state courts.

    Rivera cannot now pursue the *Batson*, Double Jeopardy and *Brady*

claims through an appeal to the Third Department because a defendant is

"entitled to one (and only one) appeal to the Appellate Division."  *See*

*Aparicio*, 269 F.3d at 91 (citations omitted).  Moreover, since "New York

does not otherwise permit collateral attacks on a conviction when the

defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing

New York's Criminal Procedure Law ("CPL") § 440.10(2)(c)), petitioner could

not now properly raise these claims, which are all based on matters

contained in the state court record, in a motion to vacate his judgment of

conviction pursuant to CPL § 440.10.  *See Aparicio*, 269 F.3d at 91; *Bossett*

*v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054

(1995).  Therefore, these claims are "deemed exhausted" for purposes of

---

[6]      Under the AEDPA, a federal district court has the authority to deny
(but not grant) an unexhausted claim on the merits, and consider the exhausted
claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992
F.Supp. 685, 687 (S.D.N.Y. 1998).

petitioner's habeas application.  *Spence v. Superintendent Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).  Although these claims are "deemed exhausted," they are procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  Accordingly, this Court's review of the substance of these claims is conditioned upon petitioner demonstrating cause for his default and resulting prejudice, *see Ramirez v. Attorney General of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001) (review of unexhausted claims in federal court is "subject to the cause and prejudice standard") (citation omitted), or presenting evidence which indicates that he is "actually innocent" of the crime of which he was convicted.  *See King v. Greiner*, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence"); *Morales v. Sabourin*, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002).

Rivera has not demonstrated cause for his failure to raise any of the above-referenced claims in his appeal, and has never alleged, in the state courts or this proceeding, that his appellate counsel rendered ineffective

12

assistance because she failed to assert these claims in her appellate brief.[7]

Since petitioner has not demonstrated cause for his failure to exhaust these claims, it is unnecessary for this Court to consider whether he suffered prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless **both** cause and prejudice is demonstrated.  See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); McLeod v. Moscicki, 2003 WL 22427757, at *8 (S.D.N.Y. Oct. 22, 2003) (Francis, M.J.) (citing Murray, 477 U.S. at 494); You v. Bennett, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003) (citing Coleman, 501 U.S. at 750); Pou v. Keane, 977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

Additionally, the Court's review of the state court record demonstrates that petitioner is not actually innocent of promoting prison contraband in the first degree.  Therefore the Court recommends that petitioner's Batson, Double Jeopardy and Brady claims be dismissed due to Rivera's failure to exhaust these claims in the state courts.[8]

---

[7]     A habeas petitioner who is alleging ineffective assistance of counsel as cause for a procedural default **must** initially present that claim in state court. See Murray, 477 U.S. at 489 (emphasis added).

[8]     In opposing the petition, respondent did not argue that Rivera failed to exhaust the above-mentioned claims, which he only asserted **after** the respondent had filed his papers in opposition to the petition.  See docket nos. 1, 10 and 17. Although a district court can raise, sua sponte, a petitioner's failure to exhaust as a basis for the denial of federal habeas relief, see, e.g., Acosta v. Artuz, 221 F.3d

**WHEREFORE**, based upon the above, it is hereby

**RECOMMENDED**, that Rivera's petition be **DENIED and DISMISSED**.

**NOTICE**:  pursuant to 28 U.S.C. § 636(b)(1), the parties have **TEN**

**(10) DAYS** in which to file written objections to the foregoing report-

recommendation.  Any objections shall be filed with the Clerk.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e) and 72.


Dated:      April 20, 2004

Gustave J. DiBianco
U.S. Magistrate Judge

---

117, 121 (2d Cir. 2000) (citing *United States v. Vincent*, 507 F.2d 1309, 1312 (2d
Cir. 1974)), the Second Circuit has held that before a claim in a petition may
properly be dismissed on procedural grounds *sua sponte*, a district court must
afford the petitioner notice of its intention to dismiss the claim on a procedural basis
and an opportunity to be heard. *Acosta*, 221 F.3d at 124.  Therefore, if petitioner
believes that the dismissal of his *Batson*, Double Jeopardy and *Brady* claims is
inappropriate based upon his failure to exhaust these claims in the state courts, he
must file timely objections to this report-recommendation.

14